**UNITED STATES of America, Appellant,**

v.

**Anthony PIPITONE, Defendant,**

**Filippo Gallina, also known as "Philip," Defendant–Appellee.**

**No. 1637, Docket 94–1690.**

United States Court of Appeals, Second Circuit.

Argued June 12, 1995.

Decided Oct. 3, 1995.

---

Allen D. Applbaum, Assistant United States Attorney for the Southern District of New York, New York City (Mary Jo White, United States Attorney, Paul G. Gardephe, Assistant United States Attorney, New York City, of counsel), for Appellant.

Jeffrey Lichtman, New York City (Gerald L. Shargel, Michael S. Pollok, New York City, of counsel), for Defendant–Appellee.

Before: OAKES, WINTER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

The United States of America appeals from a second amended judgment entered November 10, 1994 in the United States District Court for the Southern District of New York, Whitman Knapp, *Judge*, that granted the petition of defendant-appellee Filippo Gallina pursuant to 28 U.S.C. § 2255 to reduce a previously imposed sentence of sixty-three months by three months so that Gallina would be eligible for the Bureau of Prison's Shock Incarceration Program, also referred to as the Intensive Confinement Center Pro-

gram (the "ICC Program"), which is authorized by 18 U.S.C. § 4046.[1] In a plea agreement that preceded his original sentence, Gallina agreed to plead guilty to conspiring to possess heroin with the intent to distribute it in violation of 21 U.S.C. § 846. Gallina also agreed not to appeal his sentence if it fell within the sentencing range of 63–78 months calculated in the plea agreement.

We vacate the district court's second amended judgment and reinstate Gallina's initial sentence of sixty-three months imprisonment on the basis that Gallina's § 2255 petition is procedurally barred.

## Background

Gallina was arrested in connection with the investigation of a large heroin distribution organization headed by Wilfredo Bermudez that operated in upper Manhattan and the Bronx. On June 3, 1993, Gallina entered into a plea agreement with the United States (the "Agreement") in which he agreed to plead guilty to conspiring to possess heroin with the intent to distribute it in violation of 21 U.S.C. § 846. The Agreement calculated Gallina's sentencing range as 63–78 months, and the probation department agreed with that range in its presentence report. The Agreement stated that: "[I]t is specifically understood and agreed that neither party will appeal a sentence by the Court that falls within the sentencing range calculated in [the Agreement]."

At the sentencing hearing, the district court expressed its displeasure over the severity of the applicable sentencing range, stating that "the sentence that I have to impose is way out of bounds of what would be reasonable for a first [time] defendant, but there is nothing I can do about that." Indeed, the district court made further observations to this effect "so that they may be on the record and in the future, who knows, there may be legislation which will authorize reduction of sentence."

Although the district court believed that it could not mitigate Gallina's sentence, Gallina's attorney requested that the district court recommend Gallina for the ICC Program. Designed to help reduce prison overcrowding, this program subjects inmates to physical training, drill, and tight discipline, much like basic training camps in the military. In exchange, an inmate may be considered for home confinement rather than incarceration after completing the ICC Program. *See* § 4046(b) and (c), *supra* note 1; Federal Bureau of Prisons Operations Memorandum ("Op.Mem.") 249–93 (Oct. 15, 1993), at 1–2. Consequently, the ICC Program may enable an inmate to serve a shorter sentence. *See* H.R.Rep. No. 681(I), 101st Cong., 2d Sess. 151 (1990) (the "House Report"), *reprinted in* 1990 U.S.C.C.A.N. 6472, 6557. The government took no position as to whether Gallina should be recommended for the ICC Program.

At sentencing, however, both the parties and the court were unaware of the ICC Program's eligibility requirements. Gallina's counsel interpreted Bureau of Prison policy as permitting an inmate to enter the program after completing all but thirty months of his sentence. The government informed the court that Gallina "is not eligible for [the ICC Program] unless he is sentenced to ... not more than 30 months." Indeed, section 4046 itself limits participation in the program

---

1. Section 4046 provides:
   The Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement.
   (b) For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to—
   (1) adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and

(2) participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.
   (c) An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

to those serving thirty months or less. *See* § 4046(a), *supra* note 1. However, due to the lack of eligible inmates, the Bureau of Prisons has expanded eligibility to include inmates serving up to sixty months. *See* Op.Mem. 285–91 (Dec. 13, 1991), at 1; Op. Mem. 249–93, at 4.[2] At the initial sentencing, neither party informed Judge Knapp about, or apparently was aware of, the Bureau's position.

Based upon the available information, the district court recommended that Gallina be admitted into the ICC Program when he had thirty months left on his sentence. Then, at the request of the government, Gallina was informed of his right to appeal his sentence, even though the district court saw no basis for such an appeal. Gallina made no direct appeal.

On May 26, 1994, Gallina filed the instant § 2255 petition,[3] which requested a three-

month downward departure from his 63–month sentence because both the district court and the parties had misapprehended the applicable Bureau of Prisons guidelines at the time of sentencing. Gallina's counsel argued that had the court been properly informed, it would have been able to depart downward *sua sponte* to make Gallina eligible for the ICC Program. Therefore, she contended, "based on the misunderstanding that we had at the time of sentencing that you [the district court] had no basis for a downward departure, it is appropriate now for this court *sua sponte* to relook at its sentencing in order to decide that a three month downward departure is not inappropriate." Gallina's attorneys acknowledged, however, that they had misled the district court at the sentencing hearing as to its legal authority to depart downward.

At the hearing on Gallina's § 2255 petition, the district court granted the petition, vacat-

**2.** Op.Mem. 285–91, which states the rationale and legal justification for this extension of eligibility, was rescinded by Op.Mem. 249–93, which continues the extension without reiterating its underlying rationale. Op.Mem. 249–93 initially bore a cancellation date of October 15, 1994, but that cancellation date has been extended to Oct. 15, 1995 by Op.Mem. 227–94 (Nov. 1, 1994).

The Bureau interprets 18 U.S.C. §§ 3621(b) and 4042(a)(3) as vesting it with "full authority to designate inmates with sentences of over 30 months to the ICC provided that the home confinement aspect of the program does not exceed six months or 10 percent of their total term as authorized by 18 U.S.C. § 3624(c)." Op.Mem. 285–91, at 1. Because we hold that Gallina's petition is barred, we need not decide whether the Bureau of Prisons has the authority to go beyond the authorizing language of § 4046(a). *See supra* note 1.

The remainder of this footnote reflects only the views of the writer of this opinion, and is not joined by Judges Oakes and Winter. *See United States v. All Assets of G.P.S. Automotive Corp.*, 66 F.3d 483, 497 n. 13 (2d Cir.1995). The Bureau's authority to vary the thirty-month limitation expressed in § 4046(a) is certainly not free from doubt. Sections 3621(b) and 4042(a)(3) simply invest the Bureau with general authority to designate the place where a prisoner will be confined, and provide general criteria for such designations. The legislative history of § 4046 states that the Director of the Bureau "has authority under § 4042 to issue regulations establishing *other* reasonable eligibility criteria." House Report at 152 n. 7, *reprinted in* 1990 U.S.C.C.A.N. at 6558 n. 7 (emphasis added). The Bureau apparently takes the view that notwithstanding the pertinent statutory language and legislative

history, § 4046(a) does not state *exclusive* criteria (as to length of prison terms) for admission to the ICC Program. This interpretation is surely questionable. *See Eze v. United States*, No. 93 CIV 5278, 1994 WL 132242, at *2 (S.D.N.Y. Apr. 14, 1994) ("Pursuant to the United States Sentencing Guidelines and the United States Code a 'shock incarceration program' (or a 'boot camp') may be made available to 'any person who is sentenced to a term of more than 12, but not more than 30 months.' 18 U.S.C. § 4046(a) (1994); *see also* U.S.S.G. § 5F1.7. Since the mandatory minimum sentence for Eze was 60 months, he is not eligible for such a program. . . ."); USSG § 5F1.7, p.s. ("The court, pursuant to 18 U.S.C. § 3582(a) and 3621(b)(4), may recommend that a defendant who meets the criteria set forth in 18 U.S.C. § 4046 participate in a shock incarceration program.").

**3.** Section 2255 provides in pertinent part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Gallina claims no constitutional or jurisdictional error or violation of federal law, and his sentence does not exceed the maximum authorized by law. Therefore, his § 2255 petition may be granted only if his sentence "is otherwise subject to collateral attack."

ed Gallina's 63–month sentence, and departed downward three months so that Gallina could be eligible for the ICC Program. The government now appeals the district court's order.

After this appeal was taken, the district court filed an opinion that stated the reasoning underlying its disposition of Gallina's petition. *See United States v. Gallina*, No. 92 Cr. 275 (WK), slip op., 1995 WL 322140 (S.D.N.Y. May 25, 1995). The district court opined that Gallina had not improperly moved for a downward departure in violation of the Agreement, but rather had invoked the court's authority to depart *sua sponte, id.* at 4–6, and explained that it was providing § 2255 relief because the court had misapprehended its legal authority at the time of the original sentencing. *Id.* at 6. The district court deemed Gallina's undertaking in the Agreement not to appeal a sentence falling within the 63–78 month guideline range as not encompassing a commitment to forgo § 2255 relief. *Id.* at 5 & app.

Discussion

The government asserts two grounds for dismissing Gallina's petition. First, it argues that Gallina's petition is procedurally barred. Alternatively, the government submits that even if the district court misapprehended the law at sentencing, Gallina presents no cognizable § 2255 claim because this error does not constitute " 'a fundamental defect which inherently results in a complete miscarriage of justice.' " *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)); *see also Hardy v. United States*, 878 F.2d 94, 97 (2d Cir.1989). We hold that Gallina's petition is procedurally barred, and therefore do not reach the government's argument regarding the merits of Gallina's petition.[4]

■ A party who fails to raise an issue on direct appeal and subsequently endeavors to litigate the issue via a § 2255 petition must "show that there was cause for failing to raise the issue, and prejudice resulting therefrom." *Douglas v. United States*, 13 F.3d 43, 46 (2d Cir.1993) (citing *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992)). *A fortiori*, such a showing must be made when there is a complete failure to take a direct appeal. *See Scott v. United States*, 997 F.2d 340, 342 (7th Cir.1993). "The Supreme Court has stated that ' "cause" ... must be something *external* to the petitioner, something that cannot be fairly attributed to him.' " *Marone v. United States*, 10 F.3d 65, 67 (2d Cir.1993) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991)) (emphasis in *Coleman*).

Gallina asserts two "causes" for his failure to appeal. First, he argues that the grounds for such an appeal were not discovered until after the time to file a notice of an appeal had expired. Second, he submits that his plea agreement precluded him from appealing his sentence. We find no merit in either contention.

■ The Supreme Court has held that: "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.' " *Coleman*, 501 U.S. at 753, 111 S.Ct. at 2567 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). Gallina's counsel conceded that the court's "misapprehension of the law [was] based on dereliction of defense counsel," and added: "We admit our mistake, but we are learning." This ignorance of existing legal authority that arguably would have supported a downward departure for Gallina, *see supra* note 4, cannot justify Gallina's failure to take a direct appeal in this case.

■ We might be inclined to temper the rigor of this rule in an unusual case, such as the present one, where *both* government and defense counsel were imperfectly aware of the applicable law at the time of initial sen-

4. We also do not address the question whether a district court has the legal authority, pursuant to 18 U.S.C. § 3553(b), to depart downward so that a defendant may qualify for the ICC Program. *See United States v. Martin*, 827 F.Supp. 232 (S.D.N.Y.1993) (departing downward eighteen months from the applicable guideline range so that a defendant could qualify for the ICC Program); *cf. United States v. Williams*, 65 F.3d 301, 305–07 (2d Cir.1995) (approving downward departure to render defendant eligible for drug treatment program).

tencing, thereby frustrating the sentencing court from effectuating its preferred sentencing disposition. We are dissuaded from such a course in this case, in any event, by Gallina's explicit undertaking in the Agreement not to appeal a sentence that fell within a guideline range of 63–78 months.

As previously indicated, Gallina cites this undertaking as constituting "cause" for his failure to appeal that justifies his subsequent § 2255 application. In our view, this position turns the "cause" requirement on its head. Whatever linguistic distinction may be made between an "appeal" and a § 2255 petition, we are loathe to countenance so obvious a circumvention of a plea agreement. *See United States v. Jones*, No. 94–6209, 1995 WL 321263, at *1 (4th Cir. May 30, 1995) (per curiam) (unpublished opinion) ("Although Jones's plea agreement prevented him from appealing, this is not sufficient cause for his procedural default."); *Trujillo v. United States*, Nos. 92 CIV 6791 (PKL), 91 CR. 575 (PKL), 1993 WL 227701, at *3 (S.D.N.Y. June 21, 1993) ("Without alleging a constitutional or jurisdictional violation, it is an anathema to allow one who has voluntarily waived his right to appeal to attack the sentence collaterally."), *aff'd mem.*, 33 F.3d 49 (2d Cir.1994); *cf. United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.) (waiver of right to appeal in plea agreement bars collateral challenge to sentence as to "an issue clearly contemplated by, and subject to, his plea agreement waiver").

We are particularly concerned about the potential impact of a contrary rule upon plea agreements. The government, this court, the public, *and* criminal defendants have legitimate interests in the integrity of the plea bargaining process and in the finality of sentences thus imposed. *See Town of Newton v. Rumery*, 480 U.S. 386, 393 n. 3, 107 S.Ct. 1187, 1192 n. 3, 94 L.Ed.2d 405 (1987) (describing benefits of plea agreements); *United States v. Navarro–Botello*, 912 F.2d 318, 321–22 (9th Cir.1990) (discussing compelling public policy concerns underlying plea agreements), *cert. denied*, 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992); *United States v. Kuhl*, 816 F.Supp. 623, 632 (S.D.Cal.1993) (same).

Gallina points to *United States v. Lewis*, 392 F.2d 440 (4th Cir.1968), to justify § 2255

relief in this case. Although *Lewis* did grant a habeas petition to rectify a district court's misapprehension of applicable sentencing law, the Fourth Circuit was not confronted with a defendant who had explicitly agreed not to appeal the sentence that was initially (and lawfully) imposed by the district court. *Cf. Addonizio*, 442 U.S. at 187, 99 S.Ct. at 2241 (otherwise valid sentence not subject to collateral attack "based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge"). Similarly, *King v. Hoke*, 825 F.2d 720 (2d Cir.1987), and *United States v. DeLutro*, 617 F.2d 316 (2d Cir.1980), also invoked by Gallina, did not involve an agreement to forgo appeal of the sentence imposed by the district court.

### Conclusion

We vacate the district court's second amended judgment and reinstate Gallina's initial sentence of sixty-three months imprisonment.