**Arami GUZMAN, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 99–CV–0652A.**

United States District Court, W.D. New York.

March 6, 2000.

---

402

Arami Guzman, FCC Coleman, Cole-
man, FL, petitioner pro se.

Charles B. Wydysh, U.S. Attorney's Of-
fice, Buffalo, NY, for U.S., respondent.

## DECISION AND ORDER

ARCARA, District Judge.

### *INTRODUCTION*

On September 14, 1999, petitioner Arami
Guzman filed the instant motion, pursuant
to 28 U.S.C. § 2255, *pro se,* seeking to set
aside, vacate or correct his sentence. On
November 1, 1999, the government filed an
answer and memorandum of law opposing
the § 2255 motion. On December 2, 1999,
petitioner filed a reply memorandum. For
the reasons stated, petitioner's § 2255 mo-
tion is denied.

## BACKGROUND

On April 1, 1997, petitioner was indicted, along with codefendants Ramon Acevedo-Sanchez and Jose Rodriquez Padilla, in a fourteen-count indictment charging multiple violations of the federal narcotics law. Petitioner was charged with one count of conspiracy to possess with intent to distribute and to distribute cocaine base, in violation of 21 U.S.C. § 846; two counts of possession with intent to distribute and distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1); and two counts of use of a communication facility to facilitate a drug trafficking offense, in violation of 21 U.S.C. § 843(b).

On November 12, 1998, pursuant to a written plea agreement, petitioner pled guilty to one count of conspiracy to possess with intent to distribute and to distribute cocaine base, in violation of 21 U.S.C. § 846, as charged in the indictment.[1] On February 17, 1999, the Court sentenced petitioner to a term of imprisonment of 72 months. Petitioner did not appeal his conviction.

## DISCUSSION

Petitioner claims that he is entitled to be resentenced or, in the alternative, to an evidentiary hearing, because he was denied effective assistance of counsel. Petitioner contends that his attorney should have objected to petitioner being sentenced for "crack" cocaine under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1, in light of the absence of any proof by the government that the cocaine base for which he was sentenced contained sodium bicarbonate, which petitioner claims is a necessary ingredient or component of "crack" cocaine. Petitioner also claims that he was denied due process because he was sentenced based on inaccurate information, *i.e.*, the presentence report's statement that the cocaine base was "crack." The Court finds that petitioner's claims of error are procedurally barred and, in any event, lack any substantive merit.

## I. *Procedurally Barred*

In his plea agreement, petitioner waived his right to appeal and to collaterally attack his sentence. Paragraph 17 of the petitioner's plea agreement states:

> The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal, modify [sic] pursuant to Title 18, United States Code, Section 3582(c)(2) and collaterally attack any sentence imposed by the Court which falls within or is less then the sentencing range set forth in Section II, above, notwithstanding the fact that the Court may reach that range by a Guidelines analysis different from that set forth in this agreement.

Paragraph 11 of the plea agreement established a sentencing range of 63 to 78 months. As stated above, petitioner ultimately received a sentence of 72 months, which was within the range specified in the plea agreement. Thus, pursuant to the plea agreement, petitioner waived any right he may have had to collaterally attack his sentence via a § 2255 motion. *See United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir.1995)[2]; *see also Watson v. United States*, 165 F.3d 486, 489 (6th Cir.1999); *United States v. Wilkes*, 20 F.3d 651, 653

---

1. Petitioner and codefendant Ramon Acevado-Sanchez pled guilty at the same time.

2. *Accord Rivera v. United States*, 1999 WL 587792, at *2 (S.D.N.Y. Aug.5, 1999) ("Because [defendant] waived the right to appeal his sentence, under the Second Circuit's decision in *Pipitone*, he is also procedurally barred from bringing a § 2255 petition."); *Ramirez v. United States*, 963 F.Supp. 329, 330 (S.D.N.Y.1997) (same); *Trujillo v. United States*, 1993 WL 227701, at *3 (S.D.N.Y. June 21, 1993) ("[I]t is an anathema to allow one who has voluntarily waived his right to appeal to attack the sentence collaterally.").

(5th Cir.1994); *United States v. Abarca,* 985 F.2d 1012, 1014 (9th Cir.1993).

Petitioner does not allege that his waiver of his right to appeal or collaterally attack his sentence was not knowing and voluntary. The Court has reviewed the transcript of petitioner's plea proceedings and finds that the requirements of Federal Rule of Criminal Procedure 11 were scrupulously followed and that petitioner's waiver was knowing and voluntary. In particular, the Court notes that petitioner was expressly asked whether he understood that he was waiving his right to appeal or collaterally attack his plea and petitioner indicated that he understood. *See* Plea Transcript ("Tr.") at 40–41.

■ To allow petitioner to collaterally attack his plea under § 2255 at this point would be to countenance an obvious circumvention of the plea agreement in which petitioner bargained away his right to appeal or collaterally attack his sentence. This the Court will not do. As the Second Circuit has stated, "[t]he government, [the] court, the public, *and* criminal defendants have legitimate interests in the integrity of the plea bargaining process and in the finality of sentences thus imposed." *Pipitone,* 67 F.3d at 39 (citations omitted) (emphasis in original). "[T]he waiver provision is a very important part of the [plea] agreement—the Government's motivating purpose, decreased effort and expense of protracted litigation, is not well-met if the defendant is permitted to appeal that to which he has agreed." *United States v. Rosa,* 123 F.3d 94, 97 (2d Cir.1997). Accordingly, because petitioner knowingly and voluntarily waived his right to collaterally attack his sentence, he is procedurally barred from doing so now through a § 2255 motion.

## II. *Lack of Substantive Merit*

### A. *"Crack" Cocaine Versus Other Forms of Cocaine Base*

Petitioner asserts that the Court erred by sentencing him pursuant to the "crack" cocaine enhancement provisions in United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(c). U.S.S.G. § 2D1.1(c), Note D, provides that " '[c]ocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." In drafting this definition, the Sentencing Commission explained that "forms of cocaine base other than crack ... will be treated as cocaine." U.S.S.G. app. C, amend. 487 (effective Nov. 1, 1993).

■ Petitioner contends that because the sentencing enhancements in § 2D1.1(c) apply only to cocaine base in the form of "crack," before those enhancements can be applied, the government must show by a preponderance of the evidence, not merely that the substance in question was cocaine base, but that it was a particular form of cocaine base, *i.e.* "crack," as defined in Note D. Petitioner argues that the government failed to meet this burden and he should therefore be resentenced.

### 1. *James* Case

In support of his argument, petitioner relies on *United States v. James,* 78 F.3d 851 (3rd Cir.), *cert. denied,* 519 U.S. 844, 117 S.Ct. 128, 136 L.Ed.2d 77 (1996). In *James,* the Third Circuit held that the government has the burden of proving that cocaine base is in the particular form of "crack" in order for the "crack" enhancements to apply. The court found that the government had failed to meet this burden and that the defendant was therefore improperly sentenced under the "crack" enhancement provisions.

In *James,* the only reference to "crack" in the record was made by the government during the plea colloquy. Under those circumstances, the Third Circuit wrote:

We do not believe that, without more, the casual reference to crack by the Government in the colloquy with the

court over the relevant quantity of cocaine base in determining [the defendant's] offense level unmistakably amounted to a knowing and voluntary admission that the cocaine base constituted crack.

78 F.3d at 856 (internal quotations omitted).

This case is distinguishable from *James.* Unlike in *James,* the plea agreement and plea colloquy in the instant case clearly established that the defendant was pleading guilty and admitting to a conspiracy to distribute "crack," not just some other form of cocaine base. Paragraph 5 of the plea agreement provided the factual basis for the plea as follows:

a. Between on or about December 1, 1995 and January 2, 1996, the defendant, ARAMI GUZMAN, together with Favio LNU, a/k/a Jose Rodriquez Padilla, and Ramon Acevedo Sanchez, and others, knowingly and intentionally conspired to distribute and possess with intent to distribute 27.218 grams of *crack cocaine.* In furtherance thereof, Ramon Acevedo Sanchez, Favio LNU, a/k/a Jose Rodriquez Padilla, and ARAMI GUZMAN, in December 1995 and January 1996, the exact dates being unknown, had discussions regarding the distribution of *crack cocaine.* Also, in furtherance thereof, on January 2, 1996, Ramon Acevedo Sanchez, Favio LNU and [sic] Jose Rodriquez Padilla distributed 27.218 grams of *crack cocaine,* that is, cocaine base to a FBI undercover cooperating witness.
b. Up to 27.218 grams of *crack cocaine* are the amounts involved in the defendant's relevant conduct encompassed in Count 1 of the Indictment which could be readily proven by the government at trial against the defendant.

Plea Agreement at ¶ 5 (emphasis added). At the plea proceeding, the Court asked petitioner if he agreed with these facts and he responded affirmatively. Tr. 26.

At the beginning of the plea proceeding, the government described the nature of the charge to which defendant was pleading guilty as follows:

[B]oth defendants ... agree to plead guilty to count one of the indictment, which charges a violation of Title 21 United States Code Section 846, conspiracy to possess with the intent to distribute and to distribute a mixture or substance containing cocaine base, that is, *crack cocaine.*

Tr. 13 (emphasis added). The Court then asked defendant if he understood the nature of the charge and he responded affirmatively. Tr. 14.

After discussing the factual basis contained in the plea agreement, the Court asked the government how it would prove its case beyond a reasonable doubt if the case were to go to trial. Tr. 26. The government stated that its principal witness would be Luz Hernandez, who was cooperating with the government in an undercover capacity. She would testify that she knew both petitioner and codefendant Acevedo–Sanchez and that in December 1995, she had a conversation with petitioner, which she surreptitiously recorded, during which she asked petitioner if he had "crack cocaine" to sell her. *Id.* Petitioner advised her that he did not have any crack at that time, but took her pager number so that he could reach her later. Approximately two weeks later, Hernandez was contacted on her pager by codefendant Padilla. Padilla made arrangements with Hernandez to sell her "crack cocaine." *Id.* On January 2, 1996, Hernandez bought one ounce of "crack" from codefendants Padilla and Acevedo–Sanchez. *Id.* at 27. Later in January 1996, Hernandez made another one-ounce purchase of "crack" from Acevedo–Sanchez. *Id.*

The government further stated that it would call as a witness codefendant Padilla, who was by then cooperating with the government. *Id.* at 27. Padilla would corroborate Hernandez' testimony. *Id.* at 27–28.

The government also stated that it would offer taped conversations between Hernandez and petitioner and between Hernandez and Acevedo–Sanchez which would establish the conspiracy to sell "crack cocaine" to Hernandez. *Id.* at 28.

Finally, the government stated that it would call a chemist who would testify that the substance purchased by Hernandez from the defendants was "crack cocaine." *Id.*

After the government made this proffer, the Court asked petitioner if he understood the government's case and he responded in the affirmative. *Id.* He did not dispute that the drug involved was "crack."

In addition to petitioner's admissions in the plea agreement and at the plea proceeding that the substance involved was "crack," petitioner failed to object to statements in the presentence investigation report ("PSR") referring to the cocaine base as "crack" cocaine. *See* PSR at ¶¶ 16–17. At sentencing, petitioner never objected to application of the "crack" sentencing enhancements.

In sum, the record in this case shows that, unlike the defendant in *James* who casually adopted the references to "crack" without evincing a full understanding of the impact of such a plea, petitioner indicated by his words and conduct that he was fully cognizant of the implications of his admissions and that he knowingly and voluntarily admitted his participation with "crack" cocaine. *See Ramirez,* 963 F.Supp. at 333; *see also United States v. Walker,* 980 F.Supp. 144, 147–48 (E.D.Pa. 1997) (admissions by the defendant that the drug involved was "crack" cocaine and government's reference to the substance involved as "crack" distinguished the case from *James* ); *United States v. Brown,* 957 F.Supp. 696, 698 (E.D.Pa.1997) (where defendant agreed at the plea colloquy that the contraband charged in the indictment

was "crack," reliance on *James* was unavailing).

### 2. *Sodium Bicarbonate*

 Petitioner contends that under U.S.S.G. § 2D1.1(c), Note D, only cocaine base which contains sodium bicarbonate constitutes "crack" for purposes of the "crack" sentencing enhancements in U.S.S.G. § 2D1.1(c). Petitioner argues that the "crack" enhancements should not have been applied here as there was no evidence that the cocaine base at issue contained sodium bicarbonate. The Court finds this argument without merit.

In support of his argument, petitioner relies primarily on the laboratory report prepared by the government's chemist, dated January 4, 1996. *See* Item 89 at Exhibit B.[3] The laboratory report states that the cocaine at issue was in base form, but does not mention the presence of sodium bicarbonate. Petitioner's reliance on this report is misplaced. The report does not state that there was an absence of sodium bicarbonate or that the substance was not "crack" cocaine. Indeed, the government proffered at the plea proceeding that its chemist would testify that the cocaine base at issue was, in fact, "crack" cocaine.

Moreover, even if the cocaine base at issue did not contain sodium bicarbonate, that does not mean that it did not constitute "crack" cocaine. This issue was recently addressed by the Second Circuit Court of Appeals in *United States v. Diaz,* 176 F.3d 52 (2d Cir.1999). In that case, the Second Circuit held that the absence of a showing of the presence of sodium bicarbonate did not warrant a resentencing where there was other evidence showing that the substance in question was "crack." The court stated:

---

**3.** In his papers, petitioner refers to another laboratory report dated January 31, 1996, which analyzed a substance purchased on January 29, 1999. It was agreed by the parties that petitioner was not involved in this distribution and accordingly, petitioner's sentence was not predicated on this later distribution.

We conclude that the district court correctly sentenced [defendant] based on a finding that the cocaine attributed to him was "crack." First, in his PSR objection letter, [defendant] failed to challenge the PSR's determination that he was responsible for distributing cocaine base at Yale Street. Rather, he objected to the PSR's drug quantity calculation in the event that Congress decides to equalize the penalties between amounts of cocaine and cocaine base. Second, [defendant] did not object at sentencing to the court's reference to drugs distributed at the Yale Street drug block as crack. Third, the evidence presented at trial clearly established that the drug block distributed crack. For instance, [defendant's] primary drug bagger Cyr testified that the Yale Street operation sold crack and he typically manufactured it with Morales. Finally, *we conclude that in proving a substance is crack, the government is not required to show that the cocaine was processed with sodium bicarbonate.* See U.S.S.G. § 2D1.1(c), Note D; *see also United States v. Abdul,* 122 F.3d 477, 479 (7th Cir.1997) ("[W]hile crack might generally be produced using sodium bicarbonate, production with sodium bicarbonate is not the exclusive preparation method recognized for purpose of § 2D1.1(c).").

*Diaz,* 176 F.3d at 119 (emphasis added).

In this case, there is overwhelming evidence that the substance involved was "crack" cocaine. First, the government proffered at the plea allocution that its chemist would testify that the substance was, in fact, "crack." Second, petitioner's codefendant, Acevedo–Sanchez, admitted that the substance was "crack" during his plea allocution. Third, the government proffered at the plea allocution that codefendant Padilla would testify that the substance was "crack." Finally, the government proffered at the plea allocution that Luz Hernandez would testify that her discussions with petitioner were with regard to "crack" cocaine.

## B. *Ineffective Assistance of Counsel*

Petitioner contends that he received ineffective assistance of counsel because his attorney: (1) told him that cocaine base and "crack" cocaine were the same substance; and (2) failed to argue that the government is required to prove by a preponderance of evidence that the drug substance to which he pled guilty was, in fact, "crack" cocaine, as opposed to some other form of cocaine base. The Court finds these arguments without merit.

■ Petitioner cannot establish that his counsel's performance was deficient. He points to no evidence suggesting that there was a basis in fact for challenging the characterization of the substance in question as "crack." Instead, he simply claims in conclusory fashion that he was not involved with "crack" cocaine. However, as stated above, in his plea agreement and during his plea allocution, petitioner unambiguously admitted that the substance was "crack." Statements made at a plea allocution carry a strong presumption of verity and are conclusive absent some credible reasons justifying departure from their apparent truth. *United States v. Gonzalez,* 970 F.2d 1095, 1101 (2d Cir.1992) (citations omitted).

■ Further, as stated above, there was overwhelming evidence that the substance at issue was "crack" cocaine.

Given this evidence and the absence of any reasonable evidence to the contrary, it is clear that counsel quite reasonably assumed that insisting upon a hearing holding the government to its burden of proof that the substance involved was actually crack, would be unlikely to succeed and that a strategic decision to plead guilty was in [the defendant's] best interest. Such a decision is well within the range of competence demanded of attorneys in criminal cases.

*Parham v. United States,* 1997 WL 772765, at \*5 (S.D.N.Y. Dec.15, 1997) (internal quotations and citations omitted). "Failure to make an argument unsupported by evidence can hardly be termed ineffective assistance of counsel." *United States v. Trzaska,* 111 F.3d 1019, 1029 (2d Cir.1997).

■ Additionally, where the alleged ineffectiveness concerns the failure of counsel to advise the defendant to pursue a potential defense, the relevant inquiry for the Court is the likelihood of success of that defense. *See Panuccio v. Kelly,* 927 F.2d 106, 109 (2d Cir.1991). As outlined above, the government had evidence clearly establishing that the substance involved in this case was, in fact, "crack" cocaine. Thus, even if counsel had asserted on petitioner's behalf that the substance at issue was not "crack," such a defense was unlikely to succeed.

### CONCLUSION

For the reasons stated, petitioner's § 2255 motion is denied. The Clerk of Court is hereby ordered to enter judgment in favor of the respondent and take all steps necessary to close the case.

A certificate of appealability is hereby denied as petitioner has failed to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Any further requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.