**Carlos Ignacio VEGA, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**Civil Action No. 03–900 (MLC).**

United States District Court, D. New Jersey.

June 12, 2003.

Carlos Ignacio Vega, Federal Prison Camp, Lewisburg, PA, Petitioner Pro Se.

Chris Gramiccioni, United States Attorney's Office, Newark, NJ, for Respondent.

## MEMORANDUM OPINION

COOPER, District Judge.

The matter comes before this Court on Carlos Vega's *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[1] The underlying crimi-

---

**1.** A party seeking relief under 28 U.S.C. § 2255 is technically a movant rather than a petitioner for a writ of habeas corpus. *See United States v. Sanders,* 3 F.Supp.2d 554, 556–58 (M.D.Pa.1998) (discussing differences between habeas corpus petitions under 28 U.S.C. §§ 2241 and 2254, and motions under 28 U.S.C. § 2255), *aff'd,* 165 F.3d 248 (3d Cir.1999). We will refer to the movant as petitioner, for ease of reference.

nal matter in this Court was *United States v. Carlos Ignacio Vega,* Crim. No. 99–131, *aff'd,* 285 F.3d 256 (3d Cir.2002). The instant petition seeks to vacate, set aside or correct the sentence, claiming that petitioner was deprived of his constitutional right to effective assistance of counsel which caused him to miss the benefits of the Intensive Confinement Center ("ICC") Program provided under 18 U.S.C. § 4046, because counsel failed to move for a downward departure for that purpose at sentencing. (Pet.Aff.¶ 2.)

Having reviewed the materials submitted on this motion, together with the record of the underlying criminal case, we find that petitioner is not entitled to relief on the claim asserted. Accordingly, the motion under § 2255 will be denied.[2]

## I. *BACKGROUND*

Petitioner was found guilty at trial on a charge of conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846, an offense that carried a mandatory ten–year minimum. At sentencing he received the benefit of the safety valve pursuant to USSG § 2D1.1(b)(6), as well as a 2–point downward adjustment for minor role in the offense. (Sen. H'g at 4–15.) His resulting guideline range for imprisonment, in criminal history level I, was 78 to 97 months. (*Id.* at 16–17.)[3] He was sentenced to a term of 78 months. (Judg. at 2.) He took a direct appeal, represented by his retained

trial counsel, and there asserted various trial errors. The Court of Appeals affirmed in a published opinion filed on April 1, 2002. *United States v. Vega,* 285 F.3d 256 (3d Cir.2002). He filed this timely motion under 28 U.S.C. § 2255 on March 3, 2003. 28 U.S.C. § 2255(1); *see Kapral v. United States,* 166 F.3d 565, 570 (3d Cir.1999).

Petitioner's sentence in this case contained a recommendation that "[a]t the appropriate time, defendant be favorably considered for the Shock Incarceration Program (boot camp)." (Judg. at 2.) This was based upon the following statement by this Court at sentencing:

> I will send this sentence along with a recommendation that ... if at the appropriate time he becomes eligible for boot camp assignment, and if he ·requests it, this Court would recommend him to be favorably considered for that.

(Sen. H'g at 22–23.)

He states in this motion that in or about August 2002, when he was near the last 30 months of his imprisonment sentence, he inquired about placement in the ICC Program and was informed by the Bureau of Prisons that he was not eligible because his 78 month sentence exceeded the mandated 60 months or less eligibility criteria observed by the Bureau. Thus, despite the judicial recommendation to be favorably considered for that program, petitioner was extremely disappointed to learn

**2.** In addition to the § 2255 motion filed herein ("Pet."), the record in this case includes: (1) petitioner's supporting affidavit filed 3–3–03 ("Pet.Aff."); (2) petitioner's supporting brief received 3–3–03 ("Pet.Br."); and (3) respondent's Answer filed 4–28–03 ("Ans."). We have also examined the record and briefs in the underlying prosecution, Crim. No. 99–131, in particular the following: Indictment 3–17–99; 12–6–99 sentencing memorandum from defendant, *pro se;* 1–27–00 sentencing memorandum from defense counsel; 2–1–00

sentencing memorandum from government; Presentence Investigation report dated 12–30–99 ("PSR"); transcript of 2–3–00 sentencing hearing filed 12–29–00 ("Sen.H'g"); and Judgment of Conviction entered 2–7–00 ("Judg.").

**3.** The 1998 edition of the Guidelines Manual was applicable in this case, because it was in effect on both the date of the offense and the date of sentencing. (Sen. H'g at 3.)

that the length of his sentence precluded his eligibility. (Pet.Aff.¶¶ 3–7.) He brings this motion contending that his counsel rendered ineffective assistance in failing to advise the Court of this 60–month limitation on ICC Program eligibility, and in failing to move for a downward departure to that level so that he could achieve eligibility.

This Court initially reviewed petitioner's motion, *see* Rules Governing Section 2255 Proceedings for U.S. District Courts, Rule 4(b), and issued a *Miller* notice on March 13, 2003. *See United States v. Miller,* 197 F.3d 644, 652 (3d Cir.1999). By letter filed on April 22, 2003, petitioner responded that he wanted the motion to be ruled upon as filed. This Court then directed the respondent to file an Answer, and it did so on April 28, 2003.

## II. DISCUSSION

### A. The Applicable Statute

Under 28 U.S.C. § 2255:

A prisoner in custody under sentence of a [federal] court ... claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

This Court has jurisdiction under 28 U.S.C. § 1331.

Petitioner has the burden of establishing each of the claims in the Petition. *See United States v. Abbott,* 975 F.Supp. 703, 705 (E.D.Pa.1997) (citing *United States ex rel. Freddie M. Johnson v. Johnson,* 531 F.2d 169, 174 (3d Cir.1976)).

Upon review of the papers submitted in support of and in opposition to the motion, and the relevant materials contained in the record of the underlying criminal matter, this Court finds that an evidentiary hearing is not required. *See* Rules Governing Section 2255 Proceedings for U.S. District Courts, Rule 8(a); *Gov't of V.I. v. Forte,* 865 F.2d 59, 62 (3d Cir.1989). Therefore, we accept the petitioner's factual allegations as true, unless the record establishes that they are clearly frivolous. *United States v. Day,* 969 F.2d 39, 42 (3d Cir. 1992); *Forte,* 865 F.2d at 62.

### B. Ineffective Assistance of Counsel

A petitioner is barred from collaterally attacking the sentence pursuant to 28 U.S.C. § 2255 so far as that attack is based upon alleged errors that could have been, but were not, raised on direct appeal. *See United States v. Frady,* 456 U.S. 152, 162–63, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Essig,* 10 F.3d 968, 979 (3d Cir.1993). To avoid the resulting procedural bar, a petitioner generally must prove "both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains," *Frady,* 456 U.S. at 168, 102 S.Ct. 1584, or "actual innocence." *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998).

"A showing of ineffectiveness of counsel which rises to the level of a constitutional deprivation can ... constitute the type of prejudice that will excuse procedural default." *United States v. Sanders,* 165 F.3d 248, 250 (3d Cir.1999) (citations omitted). The Third Circuit has clearly stated its general preference that claims of ineffective assistance be addressed in the first instance by the district court under a § 2255 motion. *See, e.g., United States v. Tobin,* 155 F.3d 636, 643 (3d Cir.1998); *United States v. Nahodil,* 36 F.3d 323, 326 (3d Cir.1994); *United States v. DeRewal,* 10 F.3d 100, 103–04 (3d Cir.1993).

Petitioner asserts his claim under the theory of ineffective assistance of counsel. The Sixth Amendment provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to " 'reasonably effective assistance' of counsel." *Day*, 969 F.2d at 42 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The Supreme Court in *Strickland* has set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. Courts must recognize the strong presumption that counsel has rendered adequate assistance and that all significant decisions were made in the exercise of reasonable professional judgment. *Id.* at 689, 104 S.Ct. 2052; *see also Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir.1999); *Reese v. Fulcomer*, 946 F.2d 247, 256–57 (3d Cir.1991); *United States v. Gray*, 878 F.2d 702, 710 (3d Cir.1989). The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

The second prong of the *Strickland* test requires the petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. The petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

The *Strickland* Court further held that both prongs must be established in order to meet the claimant's burden, and that if either prong is not satisfied the claim must be rejected, stating:

Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insuf-

ficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result. *Id.* at 697, 104 S.Ct. 2052.

We will first describe the ICC Program and its eligibility requirements. Officially titled the "shock incarceration program," it is expressly authorized by Congress in the following statutory language:

> (a) The Bureau of Prisons may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30, months, if such person consents to that placement.
>
> (b) For such initial portion of the term of imprisonment as the Bureau of Prisons may determine, not to exceed 6 months, an inmate in the shock incarceration program shall be required to—
>
>> (1) adhere to a highly regimented schedule that provides the strict discipline, physical training, hard labor, drill, and ceremony characteristic of military basic training; and
>>
>> (2) participate in appropriate job training and educational programs (including literacy programs) and drug, alcohol, and other counseling programs.
>
> (c) An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration shall remain in the custody of the Bureau for such period (not to exceed the remainder of the prison term otherwise required by law to be served by that inmate), and under such conditions, as the Bureau deems appropriate.

18 U.S.C. § 4046 ("Section 4046").

The benefits of the ICC Program to a successful participant may include serving a shorter prison sentence. *See United States v. Pipitone*, 67 F.3d 34, 36 (2d Cir. 1995).[4] Although Section 4046 by its terms limits ICC participation to those sentenced to not more than 30 months, the Bureau of Prisons has long permitted eligibility to those serving sentences of up to 60 months. *Id.* at 36–37 n. 2.[5] The Guidelines do provide that the sentencing judge "may recommend that a defendant who meets the criteria set forth in 18 U.S.C. § 4046 participate in a shock incarceration program." USSG § 5F1.7 (p.s.).[6] Howev-

---

4. The Court of Appeals for the Second Circuit described the ICC Program in 1995 as follows:

   Designed to help reduce prison overcrowding, this program subjects inmates to physical training, drill, and tight discipline, much like basic training camps in the military. In exchange, an inmate may be considered for home confinement rather than incarceration after completing the ICC program. *See* § 4046(b) and (c) . . .; Federal Bureau of Prisons Operations Memorandum ("Op.Mem.") 249–93 (Oct. 15, 1993), at 1–2. Consequently, the ICC Program may enable an inmate to serve a shorter sentence. *See* H.R.Rep. No. 681(I), 101st Cong., 2d Sess. 151 (1990) . . ., *reprinted in* 1990 U.S.C.C.A.N. 6472, 6557.

   *Pipitone*, 67 F.3d at 36.

5. It appears that this expansion of eligibility to those serving sentences of up to 60 months was introduced by the Bureau of Prisons in 1991, due to lack of eligible inmates meeting the statutory criteria. *Pipitone*, 67 F.3d at 37. Circuit Judge Mahoney, writing for the panel in *Pipitone*, observed separately in a footnote that "[t]he Bureau's authority to vary the thirty-month limitation expressed in § 4046(a) is certainly not free from doubt." *Id.* at 37 n. 2.

6. The Commentary to USSG § 5F1.7 notes that under procedures promulgated by the Bureau of Prisons, "the Bureau will not place a defendant in an intensive confinement program unless the sentencing court has ap-

er, it is the Bureau of Prisons, and not the court, that has full authority over the designation and substance abuse treatment of persons in its custody, including but not limited to the shock incarceration program. *See* 18 U.S.C. §§ 3621, 4042 and 4046.

■ Petitioner contends that his counsel was ineffective because, in requesting and obtaining from this Court a recommendation that he be favorably considered for the ICC Program, counsel failed to inform the Court that it would be necessary to impose a sentence of no more than 60 months for petitioner to be eligible. He claims that counsel was professionally unreasonable in failing to move for a downward departure to obtain that result. He contends that counsel should have supported such a departure motion with citation to decisions in the Second Circuit in which courts have departed downward to enable the defendants to participate in Bureau of Prisons drug treatment programs, citing *United States v. Williams*, 65 F.3d 301 (2d Cir.1995) and *United States v. Martin*, 827 F.Supp. 232 (S.D.N.Y.1993) (discussed *infra*, n. 7 and accompanying text). (Pet. Br. at 4–8.)

The government acknowledges that, at petitioner's sentencing, counsel for both sides and the Court itself displayed no awareness of the 60–month eligibility limit for the ICC Program. It argues, however, that counsel's representation did not fall below the *Strickland* "objective standard of reasonableness" when he failed to make such a departure motion and thus bring Bureau of Prisons regulations and eligibility requirements, along with the above-cited cases, to the Court's attention. The government further contends that assuming *arguendo* that counsel's performance was deficient, petitioner has failed to meet the prejudice prong of the *Strickland* test

proved, either at the time of sentencing or upon consultation after the Bureau has deter-

by demonstrating that, but for the alleged error, the result of his sentencing proceeding would have been different. (Ans. at 6–9.)

■ "Departures are an important part of the sentencing process because they offer the opportunity to ameliorate, at least in some aspects, the rigidity of the Guidelines themselves." *United States v. Gaskill*, 991 F.2d 82, 86 (3d Cir.1993). Federal habeas jurisprudence now recognizes that "familiarity with the structure and basic content of the Guidelines ... has become a necessity for counsel who seek to give effective representation." *Day*, 969 F.2d at 43. Accordingly, our Court of Appeals has held that the failure to argue an appropriate downward departure constitutes ineffective assistance of counsel. *United States v. Headley*, 923 F.2d 1079, 1083–84 (3d Cir.1991).

It is equally well settled that there can be no Sixth Amendment deprivation of effective counsel based upon an attorney's failure to raise a meritless argument. *Sanders*, 165 F.3d at 253. To satisfy the first prong of the *Strickland* standard, the conduct of the attorney must rise to the level of "errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." 466 U.S. at 687, 104 S.Ct. 2052. We hold that petitioner's arguments on this issue fall short of that high standard.

Petitioner's counsel in this case skillfully negotiated with the government, during the days leading up to the eventual sentencing hearing, for it to accept a proffer which led to petitioner receiving the enormous benefit of the safety valve, which brought petitioner below the otherwise-applicable mandatory minimum of ten years (120 months). His counsel also

mined that the defendant is otherwise eligible." USSG § 5F1.7, comment (backg'd.).

wrote and argued extensively, over the strong opposition of the government, to obtain for him the two-point downward adjustment for minor role.

On the basis of those successful efforts by defense counsel, this Court found that petitioner was in the range of 78 to 87 months for imprisonment, and sentenced him at the bottom of that range. The Court also accepted counsel's request for a sentencing recommendation to the ICC Program, "if at the appropriate time he becomes eligible for boot camp assignment." (Sen. H'g at 23.) That statement by the Court was in recognition of the jurisdictional reality that although the Court can make such a recommendation, the Bureau of Prisons has sole discretion to administer its own programs.

We have examined the case law in the Second Circuit upon which petitioner claims his counsel should have based the downward departure motion, and we have pursued some additional research. The earlier case cited by petitioner, *United States v. Martin,* 827 F.Supp. 232, was a 1993 decision at the district court level which was not appealed. It was never cited with approval in a reported Second Circuit opinion. Indeed, the latter court has expressly rejected the reasoning of *Martin* in the recently-decided case of *United States v. Middleton,* 325 F.3d 386 (2d Cir.2003). As for the other case in the Second Circuit cited by petitioner, *United States v. Williams,* 65 F.3d 301 (2d Cir. 1995), it is readily distinguishable from the present case on its facts, and its holding was narrowly circumscribed by the Second Circuit itself in the *Middleton* decision. We have not located published case law discussing this issue in the Third Circuit.[7]

Here we briefly review the few published cases on point. The sentencing court in *Martin,* stating that the Bureau of Prisons ICC Program was limited to those serving sentences of 30 months or less, departed downward from 48 months to 30 months. The court expressed its reasoning thus:

... I am directed by 18 U.S.C. § 3553(b) to depart upward or downward as may be necessary to implement 18 U.S.C. § 4046 where it provides the best hope for protecting the public, deterring misconduct, and providing rehabilitation of the defendant.

A two-way interaction between sentence length and "boot camp" treatment is appropriate. Where a sentence would fall within the range of 12 to 30 months, 18 U.S.C. § 4046 indicates that shock incarceration should be considered; conversely, if 18 U.S.C. § 4046 offers the best means of achieving the purposes of sentencing should the defendant avail himself of it, the length of sentence should be calibrated accordingly.

827 F.Supp. at 233. The *Martin* decision was not appealed. *See United States v. Gallina,* No. 92 CR. 275, 1995 WL 322140, at *4 n. 2 (S.D.N.Y. May 25, 1995).

The Second Circuit in *Williams* did approve of a downward departure from 130–162 months to 60 months where defendant had been long incarcerated before being resentenced following a first appeal, and while incarcerated had been admitted to a special pilot drug treatment program at the federal prison in Butner, North Carolina. 65 F.3d at 302–07. He could only qualify for that special program if the remainder of his sentence did not exceed 36 months (requiring in his case a downward departure to 60 months). *Id.* While the circuit court again remanded for resen-

---

**7.** The Third Circuit, in an unpublished opinion, upheld a district court's denial of downward departure to enable a defendant to participate in a boot camp program. *United* States v. Ramos, 57 Fed.Appx. 51, 2003 WL 23541 (3d Cir.2003). However, the Court did not address whether departure on that basis would have been an abuse of discretion.

tencing to include certain special conditions of supervised release, it did condone the basis of the departure, stating as follows:

> We believe that the district court had the authority to depart downward in order to facilitate [defendant's] rehabilitation given the atypical facts of this case, which place it outside the "heartland" of usual cases involving defendants who may benefit from drug treatment.... [W]hen a defendant who has been in federal custody since his arrest has had no opportunity to pursue any rehabilitation, when he has been admitted to a selective and intensive inmate drug treatment program, and when a sentence within the guideline range would effectively deprive him of his only opportunity to rehabilitate himself while incarcerated, we think a departure is with the district court's discretion. If the Sentencing Commission did not give adequate consideration to the mitigating circumstance of drug rehabilitation generally, ... it certainly did not consider the unique constellation of mitigating circumstances in this case.

65 F.3d at 306.

A district court in the Second Circuit followed the *Martin* reasoning in 1995 when it granted a § 2255 motion and departed downward from 63–78 months to 60 months so that the defendant could be eligible for the ICC Program (which the district court had learned would admit inmates with sentences of 60 months or less). *Gallina*, 1995 WL 322140, at *1–4. That holding was vacated on appeal, on the basis that defendant's § 2255 motion was procedurally barred. *United States v. Pitone*, 67 F.3d 34 (2d Cir.1995). In so holding, the Court of Appeals expressly declined to reach the question "whether a district court has the legal authority, pursuant to 18 U.S.C. § 3553(b), to depart downward so that a defendant may qualify for the ICC Program." 67 F.3d at 38 n. 4.

The Court of Appeals for the Second Circuit did take the opportunity to address that question this year in *Middleton*, 325 F.3d 386. There it reversed a sentence departing from 70–87 months to 60 months which had been imposed based on grounds of defendant's extraordinary post-arrest rehabilitation and his expressed desire to qualify for the ICC Program. The appeals court held that the post-arrest rehabilitation was not sufficiently "extraordinary" to take the case out of the heartland. It further ruled that its holding in *Williams* did not support downwardly departing to permit a defendant "to enter a rehabilitation program from which he would ordinarily be precluded" because of the seriousness of his offense.[8] 325 F.3d at 390;

---

**8.** The *Middleton* court distinguished its holding in *Williams,* stating:

> [The sentencing court] appears to have departed downward in part to enable [defendant] to take advantage of the ICC program. We have previously permitted such a departure, to enable a defendant addicted to crack cocaine to take advantage of the only treatment program then available within the federal prisons. *See* ... *Williams* ....
>
> In *Williams,* we approved of a departure so the defendant could participate in a program from which he would have been excluded solely because of the timing of his conviction, but for which he was otherwise qualified. The rehabilitation program in *Williams* was an experimental, one-time trial limited to defendants with 18 to 36 months remaining on their sentences, and was the only rehabilitation program then available....
>
> Here, the Bureau of Prisons has chosen to limit the ICC program to defendants sentenced to serve a total of 60 or fewer months. 28 C.F.R. § 524.31(a)(1)(ii). *Williams* does not support downwardly departing to let a defendant enter a rehabilitation program from which he would ordinarily be precluded because the seriousness of his offense implies a sentence beyond that established by the program's administrator as a criteria for admission.

*accord United States v. Thompson,* 315 F.3d 1071, 1076–77 (9th Cir.2002) (holding abuse of discretion downward departure to prevent treatment delay); *Cf. United States v. Brimage,* 115 F.3d 73, 79–80 (1st Cir.1997) (upholding district court's denial of downward departure to permit defendant to enter residential drug treatment program; expressly declining to address whether federal sentencing guidelines authorize departure on that basis).

We conclude that there was not at the time of petitioner's sentencing—and there is not currently—any persuasive authority under the federal sentencing guidelines that would support the exercise of the sentencing court's discretion to grant a downward departure under 18 U.S.C. § 3553(b) and USSG § 5K2.0 for the purpose of creating eligibility for the ICC Program for a defendant whose guideline range is above the eligibility level. The Court recognizes that such a departure would fall within the statutory authority of the sentencing court under 18 U.S.C. § 3553(b) and guidelines section 5K2.0.[9] However, such a motion would be so lacking in merit that we cannot conclude that the performance of petitioner's counsel in this case fell below the *Strickland* objective standard of reasonableness.

Based upon the foregoing analysis, we hold that the present motion fails to satisfy the first prong of the *Strickland* test for ineffective assistance of counsel. We further hold that the *Strickland* second prong inquiry produces the same result, because petitioner cannot show that if a motion for downward departure on the stated grounds had been made by his counsel, there was a reasonable likelihood that it would have been granted. In our view, if this Court had been presented with such a

motion, it would have been an abuse of judicial discretion to have granted the motion. Even if we had granted such a motion, we are confident that our Court of Appeals would not have hesitated to reverse it on appeal by the government, for the same reasons expressed by the Second Circuit in *Middleton:*

> Neither the Bureau of Prisons in establishing and administering the ICC program, nor Congress in directing the Bureau to do so, chose to give district courts the authority to place otherwise unqualified defendants in the program. *See* 18 U.S.C. § 4046; 28 C.F.R. §§ 524.30–33. Such a departure is not only contrary to the Guidelines and the discretion given to district courts in sentencing, it may undermine the Bureau's efforts to offer an opportunity for effective rehabilitation and early release to qualified prisoners.

*Middleton,* 325 F.3d at 390 (citation omitted). For these reasons, the petition must be denied.

### III. *CONCLUSION*

The Court finds that petitioner has not met his burden to establish a right to relief under 28 U.S.C. § 2255. Based upon our review of the record, we hold that petitioner was not deprived of his Sixth Amendment right to the effective assistance of counsel when his counsel did not move for a downward departure to enable petitioner to qualify for the shock incarceration program administered by the Bureau of Prisons. Accordingly, this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence must be denied.

No certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c). *Cf.* Fed.

---

325 F.3d at 390 (citations omitted).

**9.** The potential for rehabilitation in a shock incarceration program is an unmentioned factor as a basis for departure in the Guidelines.

*See Koon v. United States,* 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (all but forbidden factors are potential bases for departure).

R.App. P. 22; Local App. R. 22.2. A certificate of appealability is issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *United States v. Cepero,* 224 F.3d 256, 267–68 (3d Cir.2000). For the reasons discussed above, the petition does not make such a showing here.

An appropriate order accompanies this Memorandum Opinion.