Dino MANDARINO, Petitioner,

v.

John ASHCROFT, Attorney General, & Immigration & Naturalization Service, Respondents.

No. CIV. 301CV875PCD.
No. CR. 592CR41PCD.

United States District Court,
D. Connecticut.

Nov. 1, 2002.

Dino Mandarino, Oakdale, LA, Pro se.

Jacqueline D. Bucar, Tyler, Cooper & Alcorn, New Haven, CT, for Petitioner.

James K. Filan, Jr., U.S. Attorney's Office, Bridgeport, CT, for Respondents.

## RULING ON PETITION FOR WRIT OF ERROR CORAM NOBIS AND MOTION TO VACATE, CORRECT OR MODIFY A SENTENCE

DORSEY, District Judge.

Petitioner seeks a writ of error *coram nobis* and moves to vacate his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth herein, the petition for a writ of error is **denied** and the motion to vacate is **granted**.

## I. BACKGROUND

Petitioner is an Italian national and lawful permanent resident of the United States since 1971. He is married to an American citizen and has two children. He worked at the same Stamford, Connecticut supermarket for twenty-two years and ran a cleaning service company. Prior to 1992, petitioner had no criminal record.

On December 30, 1992, petitioner pled guilty to the charge of conspiracy to import more than five kilograms of cocaine into the United States in violation of 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(1)(B) & 963. Pursuant to a plea agreement, the Government moved for a one level sentence reduction for substantial assistance. The motion was granted. On April 7, 1993, petitioner was sentenced to nine years imprisonment followed by five years of supervised release. Petitioner was represented in the criminal proceeding. At the sentencing, the immigration consequences of a guilty plea were discussed to a limited degree with an emphasis on getting petitioner's family circumstances be-

fore the Immigration and Naturalization Service (INS).[1]

On August 28, 1997, petitioner filed a motion to reduce his sentence pursuant to Fed.R.Crim.P. 35. He claimed that a co-defendant, Diego Narvarez, was more culpable than he yet received a lighter sentence. The motion was denied.

As the term of his imprisonment drew to a close, petitioner was, by notice dated November 15, 2000, informed by the Immigration and Naturalization Service ("I.N.S.") that his conviction rendered him subject to removal as an aggravated felon pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii). On January 12, 2001, petitioner was ordered removed to Italy. Petitioner now seeks to contest the validity of the sentence imposed through both a petition for writ of error *coram nobis* and a motion to vacate his sentence pursuant to 28 U.S.C. § 2255.

1. COUNSEL: There may be immigration consequences.
 THE COURT: All right.
 COUNSEL: Those have been discussed with Mr. Mandarino.
 Hearing on Plea, Tr. at 18.
 COUNSEL: I can't stand here and tell you I can see any reasonable way that family is going to stay together, because what's going to happen at the end of his sentence is a sticker from deport— from INS. They're going to ship him back to Italy. He's a green card alien.
 Hearing on Sentencing, Tr. at 12.
 COUNSEL: ... What you're doing—not what you're doing, what will be done with an incarceration sentence, which has to come out of this, is a deportation that will take him away from his family permanently.
 THE COURT: That's going to be the case anyway. I mean, the unfortunate part, the deportation situation is something that's going to be—
 COUNSEL: ... So, the sentence that's going to be imposed, that is required to be imposed because of the stuff that he did, we're not walking away from that, is tearing him—permanent separation from two of the three people that he cares most about. His children.
 *Id.* at 58
 THE COURT: Have you explored the question of assuming that on its face, as a green card holder, he would be subject to deportation, just because of his status—
 COUNSEL: Yeah.
 THE COURT:—and this situation, which is going to be true, frankly, at least potentially, no matter what the sentence is going to be. He, is nonetheless married to an American citizen.

 An application for reentry would seemingly start with that fact, and I'm frank to say I know it's not automatic. I'm not that familiar with immigration law. It's not automatic the way it used to be and, of course, any application that just looks at this case and says, you know, the person that reviews it, some bureaucrat someplace that says, "This guy wants to come back into this country when he's imported almost 1,200 kilograms of cocaine," the question is whether somebody is going to look at what has been presented here to get a sense of what is involved, and the real involvement in the importation. I would venture that if that could be done, he would have some reasonable prospect.
 COUNSEL: We've explored it, in brief, but it doesn't look hopeful.
 THE COURT: Okay.
 COUNSEL: I suppose if Your Honor were to choose to make any comments that might be useful in this regard, at that point in time—
 THE COURT: Well, I'm not sure that at this point it's appropriate or necessary to do, but it would seem to me that what's appropriate is that some opportunity in the future to make sure the immigration determination is made with a thorough understanding of exactly what is involved, that would not be inappropriate, but we'll deal with that at that time.
 I just was wondering whether you had explored it, and obviously you have to some, at least, limited degree.
 COUNSEL: Yeah. Yeah. It's one of those things that you don't want to know the answer to really, you know?
 *Id.* at 59–60.

## II. PETITION FOR WRIT OF ERROR *CORAM NOBIS*

Petitioner argues that the remedy of *coram nobis* is available not withstanding the fact that he is presently serving his term of supervised release. The Government responds that § 2255 is the exclusive remedy for one collaterally attacking a sentence.

 The ancient common law writ of error *coram nobis* survives by way of the All Writs Act, 28 U.S.C. § 1651(a). *See United States v. Morgan,* 346 U.S. 502, 511, 74 S.Ct. 247, 98 L.Ed. 248 (1954). The writ is an extraordinary remedy available under compelling circumstances to address errors of the most fundamental nature. *See id.* at 511–12, 74 S.Ct. 247. "*Coram nobis* is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors … of the most fundamental character have rendered the proceeding itself irregular and invalid." *Foont v. U.S.,* 93 F.3d 76, 78 (2d Cir.1996).

 The All Writs Act is a residual source of authority to issue writs not otherwise authorized by statute. *See Carlisle v. United States,* 517 U.S. 416, 428–29, 116 S.Ct. 1460, 134 L.Ed.2d 613 (1996). When a particular issue is addressed by statute, it is that statute, not the All Writs Act, that controls. *See id.* As for the continued significance of the writ in contemporary criminal proceedings, it has been said that "it is difficult to conceive of a situation … where [a writ of *coram nobis*] would be necessary or appropriate." *Carlisle,* 517 U.S. at 429, 116 S.Ct. 1460 (internal quotation marks omitted); *see also Morgan,* 346 U.S. at 512, 74 S.Ct. 247 ("no other remedy being then available and sound reasons existing for failure to seek appropriate earlier relief, this motion in the nature of the extraordinary writ of *coram nobis* must be heard by the federal trial court"); *Fleming v. United States,* 146 F.3d 88, 89–90 (2d Cir.1998) ("*Coram nobis* is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus."). Petitioner is presently serving his term of supervised release. As such, he is deemed "in custody" for purposes of § 2255. *See Scanio v. United States,* 37 F.3d 858, 860 (2d Cir.1994).[2] The availability of a statutory remedy to vacate or correct the sentence illegally imposed displaces the common law writ. *Carlisle,* 517 U.S. at 428–29, 116 S.Ct. 1460. This is consistent with the vast majority of decisions that have found the writ unavailable to one in custody. *See, e.g., United States v. Mandanici,* 205 F.3d 519, 524 (2d Cir.2000) (*coram nobis* is "essentially a remedy of last resort for petitioners who are no longer in custody pur-

---

**2.** It may be that petitioner's pre-removal detention is not "custody under sentence of a court," *see* 28 U.S.C. § 2255, but is instead a separate administrative detention entirely separate from the supervised release imposed in his sentence. "Since a deportable alien may be detained though he has not been convicted of a crime, a detention that occurs pending deportation following a convicted alien's completion of his term of imprisonment should not be viewed as a detention resulting solely from his conviction. Nor should it be viewed as part and parcel of the punishment for his criminal offense. Rather, it is part of a penalty that has traditionally been termed civil rather than punitive." *United States v. Restrepo,* 999 F.2d 640, 646 (2d Cir.1993). Granting the § 2255 petition will not release petitioner from his detention as he is presently detained for administrative rather than punitive purposes, nor was deportation ordered as part of his supervised release. If the availability of the remedy of *coram nobis* stands or falls on this distinction, there is an argument that petitioner is not in fact in custody for purposes of § 2255.

suant to a criminal conviction") (internal quotation marks omitted); *United States v. Monreal,* 301 F.3d 1127, 1132 (9th Cir. 2002); *United States v. Torres,* 282 F.3d 1241, 1245 (10th Cir.2002); *United States v. Johnson,* 237 F.3d 751, 755 (6th Cir. 2001). The petition for writ of error coram nobis is denied.[3]

## III. RULING ON PETITION TO VACATE, SET ASIDE OR CORRECT SENTENCE

Having concluded that *coram nobis* is not available, the petition is hereby construed as an amendment to and incorporated into petitioner's *pro se* § 2255 petition to the extent that it raises novel issues or issues that may not be deemed raised under the liberal interpretation accorded a *pro se* submission, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). As a consequence of the various limitations imposed on collateral review by way of a § 2255 petition, a petition may not be recharacterized as a § 2255 petition unless: (1) "the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized," or (2) " the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized." *Adams v. United States,* 155 F.3d 582, 584 (2d Cir.1998). Petitioner was notified of the potential for such a characterization and did not object.

Petitioner argues that (1) his plea was not entered knowingly, voluntarily, or intelligently as the sentencing court failed to advise him of the deportation consequences, (2) he received ineffective assistance of counsel in entering his guilty plea, and (3) he received ineffective assistance of counsel at the sentencing. The Government responds that the petition is untime-

---

**3.** This Court would be inclined to grant the petition for writ of error coram nobis under its heightened standard applicable thereto on the basis of ineffective assistance of counsel during sentencing proceedings if the claim were deemed procedurally barred for purposes of a § 2255 petition. *See Foont v. U.S.,* 93 F.3d 76, 79 (2d Cir.1996) (requiring petitioner to establish (1) "circumstances compelling such action to achieve justice, ... (2) sound reasons exist [ ] for failure to seek appropriate earlier relief, ... and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ" (citations omitted; internal quotation marks omitted)). In light of this Court's expressed desire that petitioner be permitted to apply for a waiver from deportation and the failure to raise the issue of the unavailability of such a waiver for one sentenced to more than five years' imprisonment at the time of sentencing, circumstances compel action to achieve justice. The failure of counsel to move for a downward departure would not have been made known until the INS commenced deportation proceedings, thus petitioner's delay is justifiable. Finally, petitioner's ineligibility to seek a waiver of deportation for which he otherwise would have been eligible but for the sentence imposed constitutes an ongoing legal consequence of counsel's ineffective assistance. As such, petitioner has established his entitlement to relief. *See United States v. Golden,* 854 F.2d 31 (3d Cir.1988); *United States v. Ko,* No. 93 CR. 521, 1999 WL 1216730 (S.D.N.Y. Dec. 20, 1999). This determination recognizes that "[t]he All Writs Act does not authorize [federal courts] to issue *ad hoc* writs whenever compliance with statutory procedures appears inconvenient or less appropriate," *United States v. Barrett,* 178 F.3d 34, 55 (1st Cir.1999) (internal quotation marks omitted), however, the confluence of procedural bars applicable to a § 2255 petition and the significant delay in initiating removal proceedings, nine years after the imposition of sentence, would justify coram nobis. The present petition is not simply an end run around procedural strictures. However, the availability of relief pursuant to § 2255 displaces the common law writ, thus coram nobis may not be granted in addition to § 2255 relief.

ly; no assurances were given to petitioner that a guilty plea would not result in removal and that petitioner's defense counsel was not ineffective.

## A. Entry of Plea

 Petitioner argues that had he known of the imminent deportation by being properly advised of such pursuant to FED. R. CIV. P. 11 by court, counsel or the prosecutor, he would not have plead guilty. Deportation consequences, deemed collateral to criminal proceedings, will not affect the validity of a plea. A plea entered while ignorant of the relevant immigration law would not be unknowing or involuntary, nor would it violate FED. R. CRIM. P. 11. *See Michel v. United States*, 507 F.2d 461 (2d Cir.1974). Similarly, counsel's performance will not be considered ineffective in proceedings on a plea agreement absent an affirmative misrepresentation of immigration consequences. *See United States v. Santelises*, 509 F.2d 703, 704 (2d Cir. 1975). These claims are thus without merit.[4]

## B. Ineffective Assistance of Counsel at Sentencing

Petitioner argues that counsel was ineffective for failing to inform the court as to the deportation consequences of a sentence in excess of five years. Prior to a review of the merits of this claim, as such claim was not filed within one year of the sentencing date and was not the subject of a direct appeal, petitioner must establish that the claim is timely and that he can satisfy the cause and prejudice standard necessary for collateral review of the sentence.

### 1. Timeliness of Petition

 A petition is timely if brought within one year of either the final judgment or discovery of facts rendering the sentence illegal. *See Mickens v. United States*, 148 F.3d 145, 148 (2d Cir.1998) (holding that a prisoner whose conviction became final prior to the enactment of the AEDPA had one year from the effective date of the statute to file a § 2255 motion). The relevant events triggering the one year statute of limitations include:

> (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. Petitioner's filing is found to be timely pursuant to § 2255(4). "The statute does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *Wims v. United States*, 225 F.3d 186, 189 n. 4 (2d Cir.2000); *see also Easterwood v. Champion*, 213 F.3d 1321 (10th Cir.2000). "Section 2255(4) is not a tolling provision that extends the length of the available filing time ... [but][r]ather ... resets the limitations period's beginning date, moving it from the time when the conviction became final ...

---

4. To the extent petitioner claims ineffective assistance throughout the plea and sentencing phases, counsel's representation in the two phases is separate and distinct. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

to the later date on which the particular claim accrued." *Wims,* 225 F.3d at 190. "The proper task ... is to determine when a duly diligent person in petitioner's circumstances would have discovered [the error]," and the petition is timely if filed within one year of that date irrespective of whether petitioner discovered the error prior to the due diligence date. *Id.*[5]

The error giving rise to the present case would not reasonably have been made known to one in petitioner's situation until deportation proceedings were initiated. In the present case, the unavailability of § 212(c) to one sentenced to more than five years' imprisonment would not have been a relevant inquiry until petitioner was served with a notice of removal. The INS served petitioner with a notice of removal on November 15, 2000. Petitioner filed his petition on August 22, 2001. The case law interpreting the availability of § 212(c) relief was not solidified in this Circuit until *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). As such, defense counsel's omission would not have been evident until that time. If the relevant event triggering due diligence is either the notice of removal or the decision in *St. Cyr,* then the petition was filed within the one year limit.

### 2. Failure to File Direct Appeal

Petitioner failed to raise the present claims on direct appeal and his failure to do so constitutes a procedural default. Review is therefore barred unless petitioner can establish cause and prejudice for failing to so appeal. *See Campino v. United States,* 968 F.2d 187, 190–91 (2d Cir.1992). "Cause" under the cause and prejudice test

> must be something external to the petitioner, something that cannot fairly be attributed to him.... [T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule.... For example, a showing that the factual or legal basis for a claim was not reasonably available to counsel, ... or that some interference by officials ... made compliance impracticable, would constitute cause under this standard.

*Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (internal quotation marks omitted; citation omitted). "Prejudice" is an "actual and substantial disadvantage ... [or] error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

In the present case, petitioner had no reason to appeal from his sentence. Although in general attorney inadvertence does not constitute cause, *see United States v. Pipitone,* 67 F.3d 34, 38 (2d Cir. 1995) ("[a]ttorney ignorance or inadver-

---

5. The circumstances of petitioner's case also would appear to justify equitable tolling. *See Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000). The present circumstances, in which petitioner was given the understanding at sentencing that he would be eligible to apply for a waiver of deportation and only learned of the unavailability of such relief at the conclusion of his term of imprisonment after the initiation of deportation proceedings, constitutes the rare and exceptional case justifying equitable tolling. *See id.* Petitioner further satisfied the requirement of reasonable dili-

gence throughout the period as he promptly filed his petition after learning that the impression given him at sentencing was inconsistent with the reality of his deportation proceedings. *See id.* If petitioner's obligation of reasonable diligence in pursuing his claims were imposed at the time of sentencing, such would require that petitioner, without knowledge of any resulting harm, achieve a level of expertise in immigration law and statutory interpretation that a practicing attorney struggles to achieve. Such would not be a reasonable imposition.

tence is not 'cause' because the attorney is the petitioner's agent when acting or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." (internal quotation marks omitted)), the circumstances of the present case indicate that neither the government nor defense counsel were aware of the applicable law at the time of sentencing and the preferred sentencing disposition of the court was thereby frustrated. *See id.*[6] The factual or legal basis was not reasonably made known to him until the commencement of deportation proceedings against him and the disqualification for a § 212(c) waiver became known to him after his deportation was ordered. He accepted his sentence under the belief that he would be entitled to seek a deportation waiver when the occasion arose. His understanding at the sentence was that he would be afforded the opportunity to present the merits of his continued residency to the INS on initiation of deportation proceedings.

▇▇ The resulting prejudice is apparent. Petitioner has now served a term of imprisonment in excess of that which he would have served had counsel properly notified the sentencing court. Petitioner further stands subject to an order of deportation for which there may be no waiver. The unavailability of the waiver is due to his sentence to a term of imprisonment in excess of five years. Although the

granting of a waiver pursuant to § 212(c) is discretionary, "[t]here is a clear difference ... between facing possible deportation and facing certain deportation." *St. Cyr*, 533 U.S. at 325, 121 S.Ct. 2271. Petitioner has therefore established prejudice sufficient to justify a review of the merits of his ineffective assistance of counsel claim.

*3. Merits Review*

Petitioner argues that counsel's representation at his sentencing was ineffective in light of his subsequent inability to obtain relief from the order of removal. Specifically, petitioner argues that counsel's failure to inform the sentencing court of relevant immigration law, i.e. the relevant sentence ceiling of five years for seeking a waiver pursuant to § 212(c)[7] constitutes ineffective assistance of counsel.

▇▇ Under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a counsel's assistance is deemed ineffective when it both falls "below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104

---

**6.** The present case does not involve a plea agreement specifying that a sentence within a designated range will not be the subject of an appeal. *See Pipitone*, 67 F.3d at 38–39.

**7.** Petitioner also argues that counsel was ineffective for failing to inform the Court that it could not provide a Judicial Recommendation Against Deportation ("JRAD") after imposing the sentence. *See* 8 U.S.C. § 1251(b)(2)(1988), *repealed by* Immigration Act of 1990, Pub.L. No. 101–649, § 505, 104 Stat. 4978, 5050 (1990). Prior to 1990, a JRAD essentially precluded the Attorney Gen-

eral from using a particular conviction as a basis for removal. *See Janvier v. United States*, 793 F.2d 449, 452 (2d Cir.1986). The claim is highly dubious. JRADs were considered part of the sentencing process and were made, if at all, within thirty days of the imposition of sentence. *Id.* at 453; 8 U.S.C § 1251(b) (1990). There is nothing counsel could have done to avoid the effect of the repeal and the record reflects nothing petitioner was misled by as to the availability of a JRAD.

S.Ct. 2052. This duty applies to inquiries relevant to sentencing. *See Williams v. Taylor*, 529 U.S. 362, 395, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000) (holding that a failure to investigate and present mitigating evidence during sentencing hearing constituted ineffective assistance, even when doing so would have admitted some unfavorable evidence).

■ The first prong requires inquiry into whether counsel performed reasonably under the circumstances. Counsel adequately presented details as to petitioner's long-standing ties to the community, his family ties and his excellent employment history. Counsel alluded to the potential for deportation but indicated that he had only "briefly" researched the law. Counsel did not seek a downward departure that could have preserved petitioner's right to request a waiver of removal.

A defense counsel need not become an expert in immigration law to represent a criminal defendant at a sentencing. He is required, however, to conduct "reasonable investigations" into law having some bearing on the sentence ultimately imposed. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. In the present case, a sentence in excess of five years precluded any attempt by petitioner to seek a waiver from an order of deportation. *See INS v. St. Cyr*, 533 U.S. 289, 297, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (discussing 1990 amendment of § 212(c) precluding one convicted of an aggravated felony who had served a term of imprisonment of at least five years from seeking discretionary relief). Consideration of this factor was both relevant and significant, given the sentencing court's inquiries in both the plea and sentencing proceedings. The failure to raise the issue cannot be characterized as a strategic omission as its inclusion at best would have provided a basis for departure and at worst would not have been considered. *See Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). In no event could petitioner have received a greater sentence for his counsel's discussion of potential immigration repercussions of a sentence.

■ Having satisfied the first prong of *Strickland*, petitioner must establish that but for counsel's unprofessional errors, the outcome would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The question thus becomes had counsel moved for a downward departure, would petitioner have received a lesser sentence.

■ The fact that a defendant is subject to deportation consequences alone is not an adequate basis for a downward departure. *See United States v. Tejeda*, 146 F.3d 84, 88 (2d Cir.1998); *see also United States v. Montez–Gaviria*, 163 F.3d 697, 702 (2d Cir.1998); *United States v. Ogbondah*, 16 F.3d 498 (2d Cir.1994); *United States v. Restrepo*, 999 F.2d 640 (2d Cir.1993) ("we decline to rule that pertinent collateral consequences of a defendant's alienage could not serve as a valid basis for departure if those consequences were extraordinary in nature or degree"). Nor may a sentencing court impose a sentence with the design of manipulating the availability of relief from an order of deportation to facilitate the availability of a waiver with the greatest probability of success. *See United States v. Aleskerova*, 300 F.3d 286, 300 (2d Cir.2002) (granting downward departure to afford defendant benefit of lesser showing applicable to asylum waiver rather than greater showing applicable to withholding of removal is abuse of discretion). Such tenets, serving to keep distinct the criminal sentencing process and the civil immigration proceedings, do not necessarily preclude consideration of alienage in imposing sentences.

■ Such precedent does not foreclose a downward departure based to some extent on a defendant's alienage. The Sentencing Commission did not

> foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case ....

United States Sentencing Commission, Guidelines Manual § 5K2.0, cmt. The likelihood of a case fitting such a description will be "extremely rare." *Id.* Alienage is deemed "not ordinarily relevant" as a sentencing consideration, as are family ties and employment history. *See* United States Sentencing Commission, Guidelines Manual §§ 5H1.5, 5H1.6 (Nov.2001). Factors so deemed generally are discouraged as bases for a departure, but afford such a basis for departure when "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States,* 518 U.S. 81, 96, 108, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *see Tejeda,* 146 F.3d at 88 ( "pertinent collateral consequences of a defendant's alienage may serve as a valid basis for departure if those consequences were extraordinary in nature or degree"); *United States v. Bautista,* 258 F.3d 602, 607 (7th Cir.2001) ("a downward departure based on collateral consequences of deportation is justified only if the circumstances of the case are extraordinary").

Considering this standard, petitioner presents such an extraordinary case. In 1992, petitioner was presented as a family man with strong ties to the community. He had lived in the United States for eighteen years, had no criminal history, had a strong employment history, *see United States v. Jagmohan,* 909 F.2d 61, 65 (2d Cir.1990), and was known to be responsible. His involvement as a lesser defendant in a drug trafficking was an anomaly in what would otherwise be an eminently respectable life. At the time of his sentence, another defendant whose level of involvement matched his had not been located. When located, that defendant received a sentence of six years. Of the three convictions on that particular conspiracy, only petitioner was an alien. During sentencing, this Court articulated a significant concern that petitioner's story be articulated to the INS, the only route by which to do so being a § 212(c) hearing. *See United States v. Addonizio,* 442 U.S. 178, 187, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979) ("there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge"). The purpose of the sentence imposed manifested an appropriate degree of deterrence accompanied by a realization that petitioner's fate would ultimately rest in the hands of the INS and not limit his opportunity to apply for a waiver when the occasion arose.

Suffice it to say, there can be little doubt that the mere fact that one has lived half of his life in this country or has a mother or sibling in this country from whom he will be separated would not in isolation justify a reduced sentence. *United States v. Bautista,* 258 F.3d 602, 607 (7th Cir. 2001).

> [A] trial judge's discretion when granting a downward departure is to be exercised prudently in light of the Guideline's aim of reducing sentencing disparity—while at the same time considering the history and characteristics of an individual defendant—and to be

applied in line with precedents of the Supreme Court and of this Court.

*United States v. Galante,* 111 F.3d 1029, 1036 (2d Cir.1997). If presented with an accurate statement of the unavailability of discretionary relief for one sentenced to more than five years' imprisonment, such would have been a relevant consideration in conjunction with petitioner's family situation. At the time of sentencing, petitioner was the father of two young children, the owner of a cleaning business he founded and a manager of a supermarket having spent twenty-two years at the same place of business. His earnings were evidently a substantial portion of the financial support for his children, his wife and his elderly mother-in-law. *See id.; see also United States v. Alba,* 933 F.2d 1117, 1122 (2d Cir.1991) (affirming downward departure when imprisonment of the defendant risked destruction of an otherwise strong family unit).

Petitioner's employment history and family circumstances were not, in and of themselves, so unique or unusual to justify a downward departure. *See United States v. Bryson,* 163 F.3d 742, 746 (2d Cir.1998) ("sentencing court dealing with an 'atypical' case ... need not be rigidly constrained by the proscriptions of the Guidelines"). However, these factors considered in addition to petitioner's alien status and the potential for an unavoidable order of deportation for a sentence in excess of five years would have certainly tipped the scale in the aggregate. A primary concern at the time of sentencing, in light of petitioner's alienage, was that he be afforded at least the opportunity to present the facts presented at sentencing to the INS, and the only way by which to do so would be the § 212(c) waiver procedure. Had this Court known that the sentence imposed would preclude that end, and would actually play a role in breaking up that family unit and the concomitant detriments to the family unit resulting from an unavoidable order of deportation, it would have factored this consideration into the overall mix. Given all the factors bearing on the purpose of sentencing, a five year sentence would have served the purpose adequately. There was no intention that the sentence deprive petitioner the opportunity of seeking a § 212(c) waiver. As a carryover of the JRAD procedure, though no longer applicable, this Court contemplated an affirmative recommendation, then considered as reasonably likely to succeed, that petitioner not be deported. *See St. Cyr,* 533 U.S. at 296 n. 5, 121 S.Ct. 2271 (indicating that over 50% of 212(c) waiver requests were granted).

Counsel admittedly was unfamiliar with the relevant immigration law. If provided an accurate statement of immigration consequences in conjunction with petitioner's family ties and employment history, this Court would have imposed a lesser sentence more in line with the codefendant.[8] The actual sentence imposed was significantly greater than that which would have been imposed had the relevant circumstances been made known at the time of sentencing or through a timely motion to reduce the sentence imposed. The failure to move for a downward departure, in addition to the departure for prosecutorial cooperation, or to correct the sentence to

---

**8.** The sentence of petitioner's codefendant is considered not for purposes of establishing in and of itself that petitioner's sentence was unreasonable but rather as a contemporaneous baseline for what would serve the normal purposes of sentences, and as an indicator of the probable outcome had counsel provided all relevant information in the course of petitioner's sentencing. *See United States v. Bokun,* 73 F.3d 8, 12 (2d Cir.1995); *United States v. Joyner,* 924 F.2d 454, 459–61 (2d Cir.1991) (codefendant's sentence not illegal when within guideline range).

reflect the bar to § 212(c) relief if a sentence in excess of five years were imposed therefore constitutes ineffective assistance of counsel.

## IV. CONCLUSION

Petitioner's petition for writ of error *coram nobis* (Doc. No. 24) is **denied**. Petitioner's motion to vacate his sentence is **granted**. Petitioner is hereby ordered to appear for resentencing at 10:00 a.m. on November 26, 2002.

SO ORDERED.