Filed 2/18/21  P. v. Gonzalez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUIS GONZALEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B303693<br>(Super. Ct. No. 2013023485)<br>(Ventura County) |

Luis Gonzalez appeals an order denying his motion to vacate his 2014 conviction for possession for sale of methamphetamine (Health & Saf. Code, § 11378), a felony, pursuant to Penal Code section 1473.7.[1]  He claimed that at the time of his guilty plea he was not properly advised about the mandatory immigration consequences of his conviction.  We conclude, among other things, that Gonzalez was properly advised that he would be deported as a result of this conviction,

---

[1] All statutory references are to the Penal Code unless otherwise stated.

and he has not shown that his counsel provided incorrect information about the immigration consequences.  We affirm.

FACTS

In 2013, a sheriff narcotics detective received information that Gonzalez "was dealing methamphetamine in Ventura County."  The detective "set up a controlled purchase of methamphetamine from [Gonzalez] using [a confidential informant]."

On July 26, 2013, a "high risk stop" was conducted when Gonzalez was in a parking lot where he "was known to conduct his sales transactions."  A search of Gonzalez's vehicle revealed he was "in possession of one plastic baggie containing 8 grams of methamphetamine, and a second baggie containing .4 gram of methamphetamine."  Two cellular phones were recovered.  They contained "several text messages related to drug sales."  In a search of Gonzalez's residence, detectives found "13 'false soda cans,' which are used to transport drugs."

In 2014, Gonzalez pled guilty to possession for sale of methamphetamine (Health & Saf. Code, § 11378), a felony.  The trial court suspended imposition of sentence and placed him on probation for 36 months.

At the time he entered his plea, Gonzalez signed a "felony disposition statement."  He initialed an immigration advisement on that plea form.  It provided, in relevant part, "*If I am not a citizen* and am pleading guilty to an aggravated felony, conspiracy, *a controlled substance offense, . . .* I *will be deported, excluded from the United States and denied naturalization*."  (Italics added.)

In 2019, Gonzalez filed a motion to vacate conviction under section 1473.7.  He said his attorney Adam Pearlman had

2

misadvised him about the immigration consequences of his plea. He claimed his counsel did not advise him that he faced mandatory deportation as a result of that plea, and instead incorrectly told him that the conviction "would not have any effect." In his declaration he said, "On February 21, 2019, I received notice from the U.S. Department of Homeland Security that I am subject to removal from the United States based on this case." "If I had known that the specific conviction in this case would affect my immigration status, I would have requested my attorney seek an alternative charge or would have taken the case to trial."

At the hearing on the motion, Gonzalez testified Pearlman told him that his controlled substance conviction in 2014 would not "affect [his] green card." His counsel never advised him that pleading guilty would result in his deportation. Gonzalez "filled out the plea form at the courthouse." He did not read the paragraph on the plea form "regarding immigration consequences for the plea." Pearlman did not advise him "at all of the immigration consequences of [his] plea." Gonzalez testified Pearlman "just scanned through" the plea form and "summarized what [he] would be initialing."

On cross-examination, Gonzalez testified Pearlman also represented him on his prior conviction for possession of methamphetamine in 2012. Gonzalez said he did not remember whether he asked Pearlman about the immigration consequences of his guilty plea to that 2012 offense. He did not consult with an immigration attorney in 2012 either before or after his plea. Gonzalez's counsel objected to the evidence about his 2012 conviction. The trial court overruled the objection. It said his testimony about the 2012 conviction could support the People's

3

claim that "if he was unconcerned about immigration consequences in 2012," it would undercut his testimony that he was concerned about immigration consequences in 2013 and 2014.

Pearlman testified he did not have a specific recollection about this 2014 case, but his routine practice was to read the immigration advisement on the plea form to his clients. He testified that he would never tell a client pleading guilty to "possession of sale of methamphetamine" that "it would not have any effect" on immigration status because he knows "that's not true." He had been a deputy district attorney for 10 years and a private defense attorney for 16 years. He would "read verbatim" the immigration advisement to defendants. "I would never say, oh, don't worry about immigration consequences." He also testified, "I don't believe an immigration-safe plea was possible on this case because of the charges."

The trial court denied the motion. It found, among other things, that "the conviction is not legally invalid due to prejudicial error and does not damage the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. . . . [¶] . . . The plea form, which was read to the defendant by his attorney and initialed by the defendant, states unequivocally, 'If I am not a citizen and am pleading guilty to . . . a controlled substance offense . . . I will be deported.' "

## DISCUSSION

### *Valid Immigration Consequences Advisements*

Gonzalez contends the trial court erred by denying his motion to vacate his conviction. He claims he met the

4

requirements to vacate a conviction under section 1473.7 based on his proof that he received improper immigration consequences advisements at the time he pled guilty. We disagree.

Section 1473.7 authorizes "a defendant to 'prosecute a motion to vacate a conviction' that is 'legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea.' " (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1066.) A trial court "may set aside a conviction based on counsel's immigration advisement errors without a ' "finding of ineffective assistance of counsel." ' " (*Id*. at p. 1067.) "A defendant need only show that there were 'one or more' errors that 'were prejudicial and damaged [a defendant's] "ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of [his or her] plea." ' " (*Ibid*.) To show an error is prejudicial, the defendant must "convince the court he or she would have chosen to lose the benefits of the plea bargain despite the possibility or probability deportation would nonetheless follow." (*People v. Martinez* (2013) 57 Cal.4th 555, 565.) A defendant's self-serving declaration, by itself, is insufficient to establish prejudice. (*In re Alvernaz* (1992) 2 Cal.4th 924, 938.)

A defendant who pleads guilty to a controlled substance offense must be advised that there are mandatory adverse immigration consequences that will occur as a result of that conviction. (*People v. Patterson* (2017) 2 Cal.5th 885, 894-896.) "Defendants must be advised that they *will be* deported, excluded, and denied naturalization as a *mandatory* consequence

of the conviction." (*People v. Ruiz, supra*, 49 Cal.App.5th at p. 1065.)

On Gonzalez's felony disposition statement, he initialed that he was advised, "If *I am not a citizen* and am pleading guilty to an aggravated felony, conspiracy, *a controlled substance offense*, . . . I *will be deported, excluded from the United States and denied* naturalization." (Italics added.) This was the proper immigration advisement for his controlled substance offense. (*People v. Ruiz, supra*, 49 Cal.App.5th at p. 1065.)

Gonzalez claims he presented evidence showing ineffective assistance of counsel on immigration advisements. Gonzalez testified that his counsel, Pearlman, told him his conviction would not "affect [his] green card." Pearlman advised him "everything was okay." He never told him that "pleading to [a section] 11378 would cause [him] to be deported."

Gonzalez contends Pearlman offered "no affirmative evidence" about immigration advisements because he "did not recall the specifics of [this] case." But Pearlman testified about his "routine practice" in making immigration advisements. (*People v. Arriaga* (2014) 58 Cal.4th 950, 963-964 [trial court may consider evidence about an attorney's routine practice in advising defendants about the immigration consequences of a plea].) Pearlman said his practice was to read the immigration advisement section of the plea agreement to his clients. He would tell them that if they were pleading guilty to a controlled substance offense, they "will be deported, excluded from the United States, and denied naturalization." He testified that he would have advised Gonzalez of that in this case. He also testified that he would never have told a client who was pleading guilty to "possession of sale of methamphetamine" that "it would

6

not have any effect" on immigration status, because he knows "that's not true."

Here Pearlman's testimony contradicted Gonzalez's claims about invalid immigration consequences advisements. The trial court resolved this evidentiary dispute against Gonzalez. As the People note, it found Pearlman's testimony to be credible by finding "the conviction is not legally invalid." The court also found Gonzalez was not credible. The court said that it was "unpersuaded by Defendant's testimony that he would not have pled guilty for the negotiated sentence if he had received more emphatic instruction to take the written warning 'I will be deported' more seriously."

Witness credibility is initially determined by the trial judge who observes the demeanor of the witnesses as they testify. (*People v. Maury* (2003) 30 Cal.4th 342, 403; *People v. Tapia* (2018) 26 Cal.App.5th 942, 953; *People v. Harris* (2015) 234 Cal.App.4th 671, 695.) Courts do not upset pleas based solely on "*post hoc* assertions" from defendants. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1134.) "An allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting appellant's claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224.) Consequently, courts should consider the objective "contemporaneous evidence." (*DeJesus*, at p. 1134, citing *Lee v. United States* (2017) _ U.S. _ [198 L.Ed.2d 476, 487].)

Here the contemporaneous evidence involving the 2014 plea hearing supports both the trial court's findings denying the motion and Pearlman's testimony.

Gonzalez initialed the immigration warning on his 2014 plea agreement that stated, "*I will be deported, excluded from the*

*United States and denied naturalization* [because of this conviction]." (Italics added.) That warning was both unequivocal and explicit. From Pearlman's testimony, the trial court found Pearlman read this warning to Gonzalez. (*People v. Olvera* (2018) 24 Cal.App.5th 1112, 1117 [counsel may satisfy the duty to advise on immigration consequences by reading the mandatory immigration consequences advisement on the plea form].)

At the end of that 2014 plea agreement, Gonzalez signed the following statement, "*I have read and understand this form. I have discussed with my attorney and understand the consequences of this plea . . . .*" (Italics added.) This undermines claims Gonzalez made about not understanding the consequences of the conviction on his immigration status. Moreover, Gonzalez's prior statements in the 2014 record are consistent with Pearlman's testimony.

At the 2014 plea hearing, Gonzalez pled guilty to two offenses: 1) taking a vehicle, and 2) possession of methamphetamine for sale. The prosecutor asked Gonzalez about the plea agreements he signed and the check marks he initialed on those plea forms.

Prosecutor: "By placing your initials next to these check marks and then signing with today's date, are you telling Judge Wright that you read through both of these forms and that *you understand and agree to them*?" (Italics added.) Gonzalez: "Yes."

Prosecutor: "Do you have any questions whatsoever either about the meaning of what's contained in these forms or the effect that pleading guilty on these cases is going to have on you?" Gonzalez: "No."

The prosecutor, noting that Gonzalez had signed and dated the plea forms, asked, "Did you do that after you *read through*

8

*these forms and went over them with your lawyer*?" Gonzalez: "Yes." (Italics added.)

Before accepting the pleas at the 2014 hearing, the trial judge asked Gonzalez, "*Do you understand the paragraphs that you initialed on the Felony Disposition Statement*?" Gonzalez: "*Yes*." (Italics added.)

The court: "Did you have sufficient time to talk to your lawyer about what you are doing in this case?" Gonzalez: "Yes."

The court: "Do you understand all the rights and questions that [the prosecutor] just went over with you?" Gonzalez: "Yes."

In 2014, the trial court found that Gonzalez "understands the nature of the charge(s) *and the consequences of his plea(s)*"; that his pleas are "free and voluntary"; and that he "*knowingly, intelligently*, and understandingly waived his rights." (Italics added; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 [a trial court's observations and findings about the defendant at the time of the plea may constitute substantial evidence to support a finding that the defendant's current factual claims on a motion to vacate the plea are not credible].)

Gonzalez testified at the hearing on the motion to vacate that he did not read the immigration advisement on the plea agreement. But this was contradicted by his statement at the end of the 2014 plea form certifying that he read it, and by his statements to the prosecutor and the court as shown in the transcript of the 2014 hearing. "Solemn declarations in open court carry a strong presumption of verity." (*Blackledge v. Allison* (1977) 431 U.S. 63, 74 [52 L.Ed.2d 136, 147].) They "constitute a formidable barrier in any subsequent collateral proceedings." (*Ibid.*) Gonzalez has not shown why the court could not also question the credibility of the declaration he filed

9

in support of his motion to vacate. That declaration does not contain any reference to the immigration advisement in the 2014 plea agreement. Other claims Gonzalez made in his motion to vacate are also substantially different from statements he made in the record of the 2014 proceeding. The trial court could reasonably consider this conflict in deciding Gonzalez's credibility.

Gonzalez notes that during Pearlman's testimony Pearlman said he did not know immigration law rules. But the issue was not whether he was an immigration law expert, it was whether he misadvised Gonzalez about the consequences of his plea. (*Padilla v. Kentucky* (2010) 559 U.S. 356, 369 [176 L.Ed.2d 284, 296] [the court recognized that some defense counsel are not experts in immigration law, but the relevant issue is whether they properly advised the defendant of the mandatory immigration consequences of a plea]; *People v. Olvera, supra*, 24 Cal.App.5th at p. 1117; *Mandarino v. Ashcroft* (D.Conn. 2002) 290 F.Supp.2d 253, 262 ["A defense counsel need not become an expert in immigration law to represent a criminal defendant at a sentencing"].)

Pearlman testified, "I'm unaware of how that deportation occurs in immigration court." But he also testified he knew the deportation consequences of the plea. He said he knew that "because of that section on the plea form, that it triggers deportation." He said he knew if "you're pleading guilty to a controlled substance offense, *you will be deported*." (Italics added.) Gonzalez claimed Pearlman misadvised him about the consequences. But the trial court rejected that claim by finding Pearlman properly advised him of the mandatory deportation consequences. This was a finding that Pearlman complied with

10

the "duty to give correct advice" about those consequences. (*Padilla v. Kentucky*, *supra*, 559 U.S. at p. 369 [176 L.Ed.2d 284, 296].)

In denying Gonzalez's motion to vacate, the trial court could reasonably find Pearlman's testimony was consistent with the transcript of the 2014 plea hearing and the valid immigration advisement in the plea agreement that Gonzalez initialed. (*People v. Arriaga*, *supra*, 58 Cal.4th at pp. 963-964.) Pearlman's testimony, the plea form, and the transcript of the 2014 hearing undermine Gonzalez's claims about invalid immigration advisements. (*Ibid.*) Gonzalez has not shown why the trial court could not find that he was properly advised and that there were no errors by either the court or counsel.

The trial court also rejected the credibility of Gonzalez's claim that had he known the immigration consequences he would not have entered the plea. This "is a factual question for the trial court." (*People v. Araujo* (2016) 243 Cal.App.4th 759, 763.) "It is up to the trial court to determine whether the defendant's assertion is credible . . . ." (*People v. Martinez*, *supra*, 57 Cal.4th at p. 565.) In the People's opposition to the motion, they noted that Gonzalez received the benefit of probation. But had he gone to trial, he faced "powerful corroborative evidence" to support a conviction and the prospect for a substantial prison term. The trial court noted that the potential for conviction and a prison term after a trial was substantial because of several factors including: 1) the "strength of the evidence," 2) his "prior drug conviction," 3) the "increasing seriousness of his offenses," and 4) his commission of another offense "while he was out on bail." In his motion and declaration, Gonzalez did not make a showing to challenge the strength of the People's case or show he had

11

defenses.  The trial court could reasonably find the facts relating to his arrest, the amount of methamphetamine recovered, and the text messages about drug sales constituted highly incriminating evidence.

A defendant who is "highly likely to lose at trial" and "facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." (*Lee v. United States, supra,* _ U.S. _ [198 L.Ed.2d 476, 486].)  Moreover, a defendant will not prevail where he or she failed to present "contemporaneous evidence to substantiate" his or her "post hoc assertions" about how differently he or she would have pled.  (*Id.* at p _ [p. 487].)

The trial court found that at the time of his plea in 2014 Gonzalez was an unmarried adult without children.  It could reasonably find that his testimony about the prior 2012 plea showed a lack of concern about immigration consequences.  The People noted that "[a]t no time during the [2014] plea colloquy did [Gonzalez] express *any concerns* about immigration consequences . . . ."  (Italics added.)  On January 30, 2014, Gonzalez was interviewed by the probation department.  He admitted he "sold substances for approximately 3 months prior to his arrest."  He said he wanted a one-year jail sentence and was willing to comply with probation.  But he made no reference to any concern about his immigration status.  (*Lee v. United States, supra,* _ U.S. _ [198 L.Ed.2d 476, 487].)  At the sentencing hearing in February 2014, Gonzalez also made no statement indicating any concern about immigration consequences.  (*Ibid.*)  Given the facts, the 2014 record, Pearlman's testimony, and the negative credibility finding about Gonzalez, the trial court could reasonably find it "is not reasonably probable that [Gonzalez]

would have forgone the distinctly favorable outcome [he] negotiated had [he] been advised in some other manner about the immigration consequences of pleading guilty." (*People v. Araujo, supra*, 243 Cal.App.4th at p. 764.)

Gonzalez has the burden to show trial court error. We have reviewed his remaining contentions and we conclude he has not shown grounds for reversal.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.

We concur:


PERREN, J.


TANGEMAN, J.

David R. Worley, Judge

Superior Court County of Ventura

_____ _____


Laurie A. Thrower, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steve Matthews and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.